UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNIVERSAL SETTLEMENTS
INTERNATIONAL, INC.,

        Plaintiff,                                  Hon. Robert Holmes Bell

v.                                                Case No. 1:07-cv-01243

NATIONAL VIATICAL, INC., et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court upon referral of the Honorable Robert Holmes Bell for report and recommendation on the following motions: Plaintiff's Motion for Preliminary Injunction (Dkt. 2); Defendants National Viatical, Inc., James Torchia and Marc A. Celello's Motion to Dismiss for Failure to State a Claim (Dkt. 23); and Defendants National Viatical, Inc., James Torchia and Marc A. Celello's Motion to Dismiss Plaintiff's Motion for Preliminary Injunction (Dkt. 45). The parties were heard on the various motions on February 8, 2008, February 27-28, 2008, May 16, 2008, and July 21, 2008. For the reasons stated on the record and herein, it is recommended that Plaintiff's Motion for Preliminary Injunction (Dkt. 2) be **denied**; that Defendants National Viatical, Inc., James Torchia and Marc A. Celello's Motion to Dismiss for Failure to State a Claim (Dkt. 23) be **denied**; and that Defendants National Viatical, Inc., James Torchia and Marc A. Celello's Motion to Dismiss Plaintiff's Motion for Preliminary Injunction (Dkt. 45) be **granted**.

I.  **Facts**

For purposes of this Report and Recommendation, the factual allegations of the Complaint are assumed to be correct. These parties have been involved in an action pertaining to the appointment of a Receiver (the "Receiver") to manage the assets of Trade Partners, Inc. ("TPI"), a Michigan corporation engaged in the viatical settlement business (Case No. 1:03-cv-00236). At the time of the Receiver's appointment, TPI had approximately 850 life insurance policies for which it was the beneficiary. In April 2003 the Receiver hired National Viatical, Inc. ("NVI"), a Georgia corporation and defendant herein, also engaged in the viatical settlement industry, to assist the Receiver in managing TPI's policies. Co-Defendant James Torchia is and has been at all times relevant to this action the President and Chief Executive Officer of NVI. Co-Defendant Marc A. Celello is a member of the Georgia bar and has represented NVI in various capacities.

In 2004 the Receiver determined, somewhat reluctantly, that it was in the best interest of TPI's investors and creditors to sell the policy portfolio to a third party. In part, the rationale for this was that managing the portfolio until all policies matured would involve a lengthy period of time and much uncertainty. With the assistance of NVI and Torchia, the Receiver successfully negotiated the sale of TPI's policy portfolio to Universal Settlements International, Inc. ("USI"), a Canadian viatical settlement corporation and plaintiff herein. USI's then president was Antonio Duscio, who conducted the negotiations for the sale on behalf of USI. Torchia and Duscio knew each other from previous business transactions between the two corporations. USI and the Receiver agreed to use Co-Defendant Celello as the escrow agent for the transfer of funds from USI to the Receiver necessary to effect the purchase of TPI's policy portfolio. On or about January 13, 2005, USI and Celello entered into an escrow agreement. The agreement provided that Celello was to act as the

escrow agent for a fee of $15,000.00. The following day, the Receiver and USI entered into a purchase and sale agreement (the "Sale Agreement"). The Sale Agreement contemplated a total purchase price of approximately $43 million, which was to be placed in escrow. As the benefits of each policy were transferred from TPI to USI, a certain percentage of the face value of the policy, 26.58%, would be released from the escrow account to the Receiver. The Sales Agreement also provided that USI would deposit $5 million in the escrow account to be transferred to the Receiver to pay premiums on each of the policies until each was transferred to USI. NVI was to manage the policies in the interim.

On January 14, 2005, USI deposited $5 million in the escrow account, which was promptly transferred by Celello to the Receiver for use in paying premiums on TPI's policies prior to transfer of the policies to USI. On February 17, 2005, an additional $3.5 million was wired by USI to the escrow account to be held in trust for USI's benefit. These funds were to be gradually released to the Receiver as each TPI policy was transferred to the benefit of USI.

The Court approved the sale of the viatical policy portfolio by Order dated May 25, 2005. By this time NVI had been managing the details of the TPI policies for approximately two years. On July 26, 2005, NVI entered into an agreement by and between USI and NVI in which NVI agreed to manage the TPI policies for and on behalf of USI for a one-time up-front payment of $5 million.[1] The USI/NVI agreement was executed by Duscio on behalf on USI. It is uncontroverted that Duscio was the President of USI at this time and through January 25, 2007.

---

[1] As is discussed later, Plaintiff's theory is that this contract is a sham and a fraud on USI.

II. **Defendants National Viatical, Inc., James Torchia and Marc A. Celello's Motion to Dismiss for Failure to State a Claim (Dkt. 23)**

    A.    <u>Legal Standard for Motion to Dismiss</u>

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007); see *Sistrunk v. City of Strongsville*, 99 F. 3d 194, 197 (6th Cir. 1996) (reviewing court construes the complaint liberally in a plaintiff's favor and must accept all factual allegations and "permissible inferences" as true). When an allegation is capable of more than one inference, it must be construed in Plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997).

    B.    <u>Discussion</u>

Accepting as true all of the well pleaded factual allegations contained in USI's Complaint, USI has stated sufficient facts to state a claim for relief on each of the counts Defendants seek to dismiss. Each count contains "a short and plain statement of the claim," incorporating detailed factual allegations relating to Defendants' fraudulent scheme to convert $5 million of USI's money, that is "plausible on its face," and provides Defendants fair notice of the claim and the "grounds upon which it rests." Fed R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *Erickson*, 127 S. Ct. at 2200.

Defendants argue that Counts I through IV (Conversion, Rescission or Voiding of Agreement, Intentional Interference with Contract, Civil Conspiracy) and Count X (Statutory Conversion) should be dismissed because the $5 million USI alleges was converted was actually paid to NVI as a management fee, pursuant to an agreement between Torchia and Duscio, USI's former president. Defendants argue that "Counts I through IV and Count X all depend directly upon rescission of the agreement. Accordingly, NVI now files its motion to dismiss those counts because

USI's president had apparent authority to enter into the agreement and the agreement is therefore valid and enforceable as a matter of law." *Id.*

There are several flaws to this argument. Most importantly, USI's Complaint alleges that this purported USI/NVI Agreement "is a fraudulent sham by which NVI, Torchia, Celello and Duscio are unlawfully receiving a direct or indirect benefit from USI for no consideration or inadequate consideration." (Complaint ¶ 51). In support of this allegation, the Complaint points to specific facts supporting the inference that this agreement was fraudulent: the purported agreement did not contain a term of months or years and called for a $5 million upfront management fee, despite the fact that NVI had been managing the policies for the Receiver for a per-policy management fee totaling $180,000 for two years of work (Complaint ¶ 48); USI's current President and Secretary had no knowledge of the purported agreement until March 7, 2007, despite Defendants' claim that NVI has been performing management services on the policies (Complaint ¶ 47); "Celello was not authorized by USI or the Court to transfer the money earmarked for the Purchase Price to anyone but the Receiver" (Complaint ¶ 59); and "NVI has not provided any services to USI and has not managed the Policies transferred by Receiver to USI after such policies were transferred" (Complaint ¶ 49). Accepting these allegations as true, as this Court must, the "permissible inference" is that the purported USI/NVI Agreement is a fraudulent sham, concocted by Defendants to defraud USI of $5 million. *Sistrunk v. City of Strongsville,* 99 F. 3d 194, 197 (6th Cir. 1996); *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 228-29 (6th Cir. 1997).

Plaintiff contends that Defendants cannot now hide behind the "apparent authority" of Duscio to enter into this fraudulent agreement with NVI. Essentially, Defendants are arguing that even if the allegations in the Complaint are true (that the purported agreement is fraudulent), the agreement is

nonetheless enforceable because NVI rightfully relied upon the apparent authority of Duscio, as president of USI, to enter into the (fraudulent) agreement.  Under either Michigan or Georgia law, a principal is not bound by the terms of a fraudulent agreement entered into by an agent for that principal. *See* O.C.G.A. § 10-6-59 (2007) ("Where an agent shall conspire with the other party, his principal shall not be bound thereby"); *First Nat. Bank of Paulding County v. Cooper*, 312 S.E.2d 607 (Ga. 1984) (same); O.C.G.A. 10-6-63 ("The principal may recover back money paid illegally or by mistake of his agent or goods wrongfully transferred by the agent, the party receiving the goods having notice of the agent's want of authority or willful misconduct"); *Garlick v. Lake Shore Lumber Co.*, 189 N.W. 1009 (Mich. 1922) ("It is well settled that a person may avoid a contract made by his agent as a result of fraud or collusion between the agent and the person with whom he makes the contract."). Therefore, according to Plaintiff, USI is not bound by the terms of the fraudulent purported agreement entered into between Duscio for USI and Torchia for NVI.

While Defendants ultimately will be entitled to present their own evidence concerning the enforceability of the purported USI/NVI Agreement at a trial on the merits of this action, a motion to dismiss may only test the sufficiency of the pleadings. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Defendants' Motion to Dismiss rests entirely on their claim that the purported USI/NVI Agreement is enforceable against USI.  However, USI has alleged in the Complaint that the purported agreement was a fraudulent sham, and has offered sufficient factual support for this allegation. At this stage in the proceedings, USI's factual allegations must be accepted as true, and all permissible inferences from these facts must be construed in USI's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997). From the facts alleged and the inferences to be drawn

from those facts, one could conclude that the purported USI/NVI Agreement is a fraudulent sham and not enforceable against USI.

Further, USI has met the pleading standards of the Federal Rules of Civil Procedure. In its Complaint, USI has included "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and stated "enough facts to state a claim for relief that is plausible on its face" for each of the claims Defendants seek to dismiss. *Twombly*, 127 S. Ct. at 1974.

In Count I – Conversion, USI incorporates the detailed factual allegations relating to Defendants' alleged conversion of $5 million of USI's money in paragraphs 1-50, and alleges that "Celello, Torchia and NVI wrongfully converted $5,000,000.00 of the money earmarked by USI for payment of the Purchase Price for USI's purchase of the Policies" (Complaint ¶ 53), and "Celello, Torchia and NVI have converted USI's property to their own use and for their own benefit" (Complaint ¶ 55).

In Count II – Rescission or Voiding of Agreement, USI incorporates the prior detailed factual allegations relating to Defendants' alleged conversion of $5 million of USI's money, and alleges that "The purported USI/NVI Agreement was created by Duscio, Torchia and Celello as part of their plan to loot USI and obtain $5,000,000 for their personal benefit" (Complaint ¶ 58), and alleges that the purported agreement was procured by the fraud and deception of Defendants, as part of the conspiracy among Defendants, because of mutual mistakes on the part of USI and NVI, and/or by the breach of fiduciary duties owed by Celello and Duscio to USI (Complaint ¶ 63).

In Count III – Intentional Interference with Contract, USI incorporates the detailed prior detailed factual allegations relating to Defendants' alleged conversion of $5 million of USI's money,

and alleges that "By their conduct, NVI, Torchia and Celello intentionally and improperly interfered with the contract [between USI and the Receiver] by interfering with USI's ability to perform the Purchase and Sale Agreement and pay the Purchase Price stated therein." (Complaint ¶ 71).

In Count IV – Civil Conspiracy, USI incorporates the detailed prior detailed factual allegations relating to Defendants' alleged conversion of $5 million of USI's money, and alleges that "By their concerted action, Defendants NVI, Torchia and Celello, along with Duscio, combined to accomplish an unlawful purpose . . . to take for their own use and benefit USI's funds earmarked for payment of the Purchase Price to the Receiver for the Policies." (Complaint ¶ 74).

In Count X – Statutory Conversion, USI incorporates the detailed prior detailed factual allegations relating to Defendants' alleged conversion of $5 million of USI's money, and alleges that "USI has been damaged as a result of the theft or embezzlement by Celello, NVI, Torchia and Duscio of USI's money earmarked for the payment of the Purchase Price of the Policies" (Complaint ¶ 110), thereby entitling USI to treble damages under MCL 600.2919a (Complaint ¶ 112).

In each of these counts Defendants seek to dismiss, USI has stated a claim upon which relief can be granted. Thus, pursuant to Fed. R. Civ. P. 12(b)(6), the undersigned recommends that Defendants National Viatical, Inc., James Torchia and Marc A. Celello's Motion to Dismiss for Failure to State a Claim (Dkt. 23) be **denied**.

III. **Plaintiff's Motion for Preliminary Injunction (Dkt. 2) and Defendants' Motion to Dismiss Same (Dkt. 45)**

    A.    <u>Legal Standard for Preliminary Injunction</u>

"Issuance of a preliminary injunction is the 'strong arm of equity and should not occur in doubtful cases.'" *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18*, 471 F.2d 872, 876 (6th Cir. 1972). The movant bears the burden of establishing its entitlement to a preliminary injunction, "one of the most drastic tools in the arsenal of judicial remedies." *Am. Civil Liberties Union of Ky. v. McCreary County*, 354 F.3d 438, 444 (6th Cir. 2003). Courts must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See, e.g., Sandison v. Michigan High School Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995).

    B.    <u>Discussion</u>

Plaintiff seeks in its motion for preliminary injunction essentially to secure any judgment it might eventually obtain variously by freezing Defendants' assets or obtaining a bond as security. USI alleges in the Complaint that Defendants NVI, James Torchia, Marc A. Celello, and non-defendant Antonio Duscio, converted $5 million of USI's money which was allegedly held by Celello as escrow agent for the purpose of purchasing a portfolio of insurance policies from the court-appointed Receiver for TPI. In the Complaint USI lays out in detail its theory that USI's purchase agreement with the Receiver for TPI required the transfer of $43 million to Celello's client trust account. Disbursements from Celello's account for the purchase price of the policies and the

alleged shortfall of $5 million in the account due to Celello's transfer of $5 million to the benefit of Duscio, USI's former president, Torchia, and himself.

An evidentiary hearing was held on February 27-28, 2008, with Jeffrey Panos, president and 50% owner of USI, testifying in support of Plaintiff's motion for preliminary injunction. Panos was quite candid that he had little or no involvement in negotiating the contract between TPI and USI. Panos testified that USI's reputation in the viatical industry in the 2005 time frame was very good (Dkt. 41, p. 10). He further testified that if USI does not ultimately recover the allegedly converted $5 million it will have difficulty performing its contract with TPI (Dkt. 41, p. 13). He also stated that if USI is not able to supply VCH, a German investor,[2] with the policies that USI has agreed to supply to VCH it would damage USI's business reputation with VCH (Dkt. 41, p. 15).

Michael Quilling also testified regarding the issue of a preliminary injunction on February 28, 2008 (Dkt. 42). Quilling is special counsel to the Receiver, Bruce Kramer, in the Trade Partners, Inc. Receivership, Case No. 1:03-cv-00236-RHB. Quilling testified that originally, under the agreement between TPI and USI, there was an intent to place $43 million in an escrow depository under the joint control of Bruce Kramer, TPI's Receiver, and Marc Celello (Dkt. 42, p. 52). However, because the transfer of some of the policies from TPI to USI took much longer than contemplated, TPI accumulated maturities, or death claims paid, of at times $16 million (Dkt. 42, p. 61), of which approximately 3/4 belonged to USI (Dkt. 42, pp. 62-63). At one point in time, TPI actually owed USI $1.8 million (Dkt. 42, p. 64). The transfer of some policies became difficult because of various insurance companies dragging their feet and policies maturing while still in the

---

[2] VCH is a German company which has invested in the viatical portfolio being purchased by USI from TPI.

ownership of TPI. In essence Quillng testified that the purchase price and the amount required in escrow became a moving target.

For purposes of Plaintiff's motion for preliminary injunction and Defendants' motion to dismiss that motion, a summary of Quilling's testimony would be that USI was not currently in default and might never be in default on its agreement with TPI.  Thus, Plaintiff has failed completely in making any evidentiary showing of irreparable harm and is really simply seeking to engage in prejudgment attachment of Defendants' assets. USI has failed to establish that it would be irreparably injured in the absence of injunctive relief.  Irreparable harm can only occur if full compensation by money damages is inadequate.  USI argues that a money judgment would be inadequate because the funds paid to NVI were wrongfully diverted from funds needed and earmarked from payments to the Receiver, and that such funds must be immediately recouped to avoid defaulting on payments from USI to TPI.  However, Quilling and Kramer both testified that the funds paid to NVI did not come from Receivership funds (Dkt. 42, pp. 88-90, 137, 142).  Panos admitted he had never received any default notice from the Receiver (Dkt. 41, pp. 72-73).  Likewise, neither Quilling nor Kramer testified that USI is in default.

Although the four factors must all be considered and balanced, the undersigned concludes that whether the Plaintiff has a strong likelihood of success on the merits cannot be determined prior to a trial on the merits.  Further, issuance of the injunction would certainly cause substantial harm to Defendants.  Finally, the undersigned is aware of no public interest that would require that an injunction issue.  Thus, the undersigned recommends that Defendants National Viatical, Inc., James Torchia and Marc A. Celello's Motion to Dismiss Plaintiff's Motion for Preliminary Injunction (Dkt. 45) be **granted** and that Plaintiff's Motion for Preliminary Injunction (Dkt. 2) be **denied**.

IV.     **Conclusion**

For the reasons stated above, the undersigned recommends that Plaintiff's Motion for Preliminary Injunction (Dkt. 2) be **denied**; that Defendants National Viatical, Inc., James Torchia and Marc A. Celello's Motion to Dismiss for Failure to State a Claim (Dkt. 23) be **denied**; and that Defendants National Viatical, Inc., James Torchia and Marc A. Celello's Motion to Dismiss Plaintiff's Motion for Preliminary Injunction (Dkt. 45) be **granted**.

Respectfully submitted,

Date:  September 4, 2008        /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)©.  Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).