UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNIVERSAL SETTLEMENTS
INTERNATIONAL, INC.,

    Plaintiff,

v.

NATIONAL VIATICAL, INC., JAMES
TORCHIA, and MARC A. CELELLO,

    Defendants.
                                           /

File No. 1:07-CV-1243

HON. ROBERT HOLMES BELL

# **O P I N I O N**

This diversity tort action is currently before the Court on Defendants' motions for summary judgment and to determine choice of law (Dkt. Nos. 253, 254, 256, 312). For the reasons that follow, the motions will be denied.

## I.

This action is related to Plaintiff Universal Settlements International, Inc.'s ("USI") purchase of certain assets of Trade Partners, Inc. ("TPI"), from the court-appointed Receiver in *Quilling v. Trade Partners, Inc.*, File No. 1:03-CV-236 (W.D. Mich.). The TPI assets consisted of a portfolio of approximately 850 life insurance policies. The Receiver hired Defendant National Viatical, Inc. ("NVI") to manage the TPI portfolio on behalf of the Receivership. On or about January 14, 2005, USI agreed to purchase the TPI portfolio from the Receiver for 26.58% of the total death benefit of each policy as it was transferred to the

benefit of USI. (Dkt. No. 262, Ex. 1, Purchase and Sale Agrmt. at ¶ 2.1.) The policies had potential death benefits of approximately $160 million, so the total purchase price of the TPI portfolio was anticipated to be approximately $43 million. (*Id.*) USI and the Receiver agreed that Marc A. Celello, an attorney licensed in the state of Georgia, would be the escrow agent for any transfer of funds from USI to the Receiver necessary to effect the purchase of the TPI portfolio. (Purchase and Sale Agrmt. ¶ 2.1; Dkt. No. 313, Ex. A, Escrow Agrmt.)

On May 25, 2005, United States Magistrate Judge Ellen S. Carmody issued a Report and Recommendation recommending approval of the sale of the TPI portfolio to USI. (File No. 1:03-CV-236, Dkt. No. 1017.) This Court entered an order approving the sale on July 19, 2005. (File No. 1:03-CV-236, Dkt. No. 1057.)

Prior to January 25, 2007, Antonio "Tony" Duscio, Christopher Halas and Jeffrey Panos, were equal shareholders of USI. (Compl. ¶ 40.) Duscio was the president of USI and was responsible for arranging for the purchase of the TPI portfolio. USI funded the purchase of the TPI portfolio in installments. On January 13, 2005, USI wired $5 million to Celello as a deposit so that the Receiver could pay premiums on the policies until they were transferred to USI, and $15,000 for Celello's fee. These monies were placed in Celello's IOLTA account ending in 9588 ("the '9588 IOLTA account"). On February 17, 2005, USI wired $33.5 million to Celello to be used to pay the purchase price. This money was placed in Celello's USI beneficial account ending in 7064 ("the '7064 escrow account").

USI made two additional wire transfers to Celello that are at the heart of the parties' dispute in this case. On June 13, 2005, USI wired $4.5 million to Celello, and on December 13, 2005, USI wired $2 million to Celello. These wired funds were not placed in the '7064 escrow account. Rather, they were placed in Celello's '9588 IOLTA account. (Dkt. No. 268, Ex. 5.) Celello made the following transfers from the '9588 IOLTA account: $1 million to NVI on August 16, 2005, $2.715 million to NVI on August 23, 2005, $1.5 million to the '7064 escrow account on December 13, 2005, $1 million to Duscio on December 14, 2005, and $795,000 to NVI on December 22, 2005. (Dkt. No. 318, Ex. 4.) USI contends that the total amount of these two wires ($6.5 million) was earmarked for the purchase price of the policies, and that it should have been held for the benefit of USI. Defendants, on the other hand, contend that of the $6.5 million transferred, $5 million was paid pursuant a policy management agreement entered into between USI and NVI on July 26, 2005, (the "USI/NVI Agreement").

As of the end of January 2007, Halas and Panos acquired all of the stock of USI held by Duscio and took over as president and secretary of USI. (Am. Comp. ¶¶ 1, 40.) Duscio was no longer an officer, director, or shareholder of USI. (Compl. ¶ 40.) Halas and Panos determined that $5 million of USI funds were unaccounted for. They suspected that Duscio, together with NVI, James Torchia (NVI's CEO), and Celello, had misappropriated the funds.

On December 12, 2007, USI filed this action against NVI, Torchia, and Celello, alleging claims of (1) conversion, (2) rescission or voiding of agreement, (3) intentional

interference with contract, (4) civil conspiracy, (5) breach of fiduciary duty, (6) aiding and abetting breach of fiduciary duty, (7) aiding and abetting corporate waste, (8) promissory estoppel, (9) negligence, (10) statutory conversion, and (11) fraud. (Dkt. No. 77, Am. Compl.) USI has asserted claims against Duscio in a private arbitration in Ontario, Canada. (Am. Compl. ¶ 5.)

Defendants NVI and Torchia, joined by Celello, move for summary judgment as to the nine claims asserted against all of the Defendants[1] on the basis that there is no evidence to support Plaintiff's fraud/theft/conspiracy claims against Defendants. (Dkt. Nos. 253, 256.) Defendant Celello has filed a motion to determine choice of law and he has independently moved for summary judgment as to the claims asserted against him alone.[2] (Dkt. Nos. 254, 312.)

## II.

Defendant Celello has requested the Court to make a determination as to what law will be applied to USI's claims. A federal court sitting in diversity applies the choice-of-law provisions of the forum state. *NILAC Int'l Mktg. Group v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496

---

[1] NVI and Torchia's motion for summary judgment, which is joined by Celello, seeks summary judgment as to Counts I-IV, VI-VII, and X-XII, alleging claims of conversion, rescission or voiding of agreement, intentional interference with contract, civil conspiracy, aiding and abetting breach of fiduciary duty, aiding and abetting corporate waste, statutory conversion, and fraud which are asserted against all Defendants.

[2] Celello seeks summary judgment as to Counts V, VIII, and IX, alleging breach of fiduciary duty, promissory estoppel, and negligence, which are asserted against him alone.

4

(1941)). For tort claims, Michigan courts apply the law of the forum unless there is a "rational reason" to displace it. *Olmstead v. Anderson*, 400 N.W.2d 292, 302 (Mich. 1987).

> In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Sutherland v. Kennington Truck Service, Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997) (citing *Olmstead*, 400 N.W.2d at 305). "Although this balancing approach most frequently favors using the forum's (Michigan's) law, Michigan courts nonetheless use another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter." *Hall v. Gen. Motors Corp.*, 582 N.W.2d 866, 868 (Mich. Ct. App. 1998). For contract claims, Michigan courts balance the expectations of the parties to the contract with the interests of the states involved to determine which state's law to apply. *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 302 (6th Cir. 2008); *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698 (Mich. 1995).

Defendant Celello asserts that Georgia has an interest in having its law applied because all Defendants reside in Georgia, all of the actions took place in Georgia, and a Georgia corporation is involved. Celello further contends that Georgia's interest in having its law applied outweighs Michigan's interest because no injuries occurred in Michigan.

Plaintiff USI contends that Michigan has the primary state interest in this case because the gravamen of USI's claims is that Defendants misappropriated $5 million of the money that USI transferred to Celello pursuant to the Purchase and Sale Agreement with the Receiver, which Sale Agreement was made and to be performed in Michigan and to be construed in accordance with Michigan law.

"[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992) (citing *Int'l Adm'rs, Inc. v. Life Ins. Co.*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985)); *accord Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 865 (6th Cir. 2006)); *In re Trade Partners, Inc., Investors Litig.*, No. 1846, 2008 WL 2757835, at *5 (W.D. Mich. July 11, 2008). "When the substantive laws of the various states are not in conflict on a particular issue, judicial efficiency counsels that the law of the forum may be applied." *In re Disaster at Detroit Metrop. Airport on Aug. 16, 1987*, 750 F. Supp. 793, 796 n.6 (E.D. Mich. 1989).

Celello has asserted generally that Georgia has an interest in the application of its laws for purposes of certainty and predictability of results, but he has not identified any conflicts between the applicable Michigan and Georgia law. USI asserted in its response brief that there are no such conflicts, and Celello has not filed a reply challenging this assertion. The Court concludes that there is no rational reason not to apply the law of the forum at this time. The Court will accordingly deny Celello's motion to determine choice of law without

prejudice to re-raise the issue should it appear that the substance of the relevant state laws differ or conflict.

### III.

Defendants NVI and Torchia, joined by Celello, move for summary judgment as to the nine claims asserted against all of the Defendants.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such

that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

Defendants move for summary judgment on the basis that there is no evidence to support Plaintiff's fraud/theft/conspiracy claims against them. Defendants contend that there is no genuine dispute that USI paid NVI $5 million in 2005 pursuant to a bona fide agreement for the management of USI's recently purchased TPI viatical policies, as an advance payment for management services for the life of the policies. According to Defendants, USI willingly paid NVI for management services USI desperately needed and NVI subsequently provided. Defendants contend that USI cannot undo a legitimate contract entered into under the former management simply because the new management thinks it was a bad deal.

USI responds that it is not trying to undo a lawful corporate act. Instead, USI contends that the USI/NVI Agreement is a fraudulent sham by which NVI, Torchia, Celello and Duscio are unlawfully receiving a benefit from USI for no consideration or inadequate consideration, and that the USI/NVI Agreement was created to justify the theft of $5 million from USI. (Am. Comp. ¶ 51.) USI contends that the $6.5 million wired to Celello on June 16, 2005, and December 13, 2005, was earmarked for payment of the TPI policies, and that, because the TPI policies have been paid for, this money should have been returned to USI. USI contends that Defendants' motion for summary judgment should be denied because there

is an issue of fact as to the legitimacy of the USI/NVI contract and because discovery is incomplete.

The foundation of Defendants' motion for summary judgment is their contention that there is no question of fact that the July 26, 2005, USI/NVI Agreement was a bona fide agreement for portfolio management services, executed by Duscio on behalf of USI while he had authority to bind USI.

There is no dispute that in July 2005, Duscio, as president of USI, had apparent and actual authority to bind USI to legitimate contracts with third parties to manage USI's policies. Nevertheless, as noted in the Magistrate Judge's September 4, 2008, Report and Recommendation, "[u]nder either Michigan or Georgia law, a principal is not bound by the terms of a fraudulent agreement entered into by an agent for that principal." (Dkt. No. 137, R&R 6 (citing cases).) In addition, Defendants have not presented an original copy of the USI/NVI Agreement. To prove the content of a writing, the Federal Rules of Evidence generally require the original writing, Fed. R. Evid. 1002, but "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003. Thus, the question of the legitimacy of the USI/NVI Agreement – whether it is authentic and whether it was entered into for a fraudulent purpose, – is central to determining both Duscio's authority to enter into the agreement, and the admissibility of a duplicate of the copy of the USI/NVI Agreement.

The July 26, 2005, USI/NVI Agreement purports to be a written contract which obligated USI to pay NVI $5 million in advance for insurance policy management services. In support of their contention that this is a legitimate contract, Defendants have presented declarations from Tony Duscio and James Torchia, the signatories to the USI/NVI Agreement, and Marc Celello, the drafter of the USI/NVI Agreement. Duscio, former president of USI, states in his declaration that he executed the USI/NVI Agreement on behalf of USI after USI determined that the TPI portfolio could not be effectively managed in house or by an accounting firm. (Dkt. No. 253, Ex. 5, Duscio Decl. ¶¶ 14-20.) Torchia, CEO of NVI, states in his declaration that after the Magistrate Judge recommended approval of the sale of the TPI portfolio, but before the district court approved the sale, Torchia entered into negotiations with Duscio regarding management of the TPI portfolio. They agreed that NVI would manage the TPI portfolio at its usual and customary rate of $50 per policy per month, but that the fee would have to be paid up front for the estimated ten-year service life of the portfolio. (Dkt. No. 253, Ex. 8, Torchia Decl. ¶¶ 14, 15, 19, 20.) Torchia signed the original of the USI/NVI Agreement and sent it to Duscio. Duscio signed it, sent Torchia a photocopy, and kept the original. (*Id.* at ¶ 23.) Celello states in his declaration that he drafted the USI/NVI Agreement to document the management agreement negotiated between the principals of NVI and USI, and that after he drafted the USI/NVI Agreement, the hard drive on the laptop he used to draft the agreement crashed, was unable to be repaired, and was disposed of. (Dkt. No. 253, Ex. 4, Celello Decl. ¶¶ 9, 10.)

Defendants have also offered the declarations of three USI employees who indicated that it was well known within USI that USI had hired NVI to manage and track the TPI portfolio. (Dkt. No. 253, Exs. 6, 7, 9, Ruxton Decl. ¶¶ 4-5, Toffolo Decl. ¶¶ 5-8, Waddell Decl. ¶ 7.) Finally, Defendants have offered the testimony of Bruce Kramer, the Receiver, and Michael Quilling, special counsel to the Receiver, to the effect that after investigation, they determined that there were no unauthorized disbursements from the escrow account, that the $5 million payment from USI to NVI did not harm the Receivership estate, and that "there was no harm, no foul to anybody about his transaction." (Dkt. No. 313, Ex. 2, Kramer Dep. 202-03; Dkt. No. 42, Prelim. Inj. Hr'g Tr. 2/28/2008, at 86-88, 142-43.)

In response to Defendants' motion, USI has presented evidence that it contends raises issues of fact regarding the asserted legitimacy of the USI/NVI Agreement. Plaintiff asserts that it is implausible that the parties would not have made duplicate originals of the Agreement, that they would have used the services of only one lawyer to draft the Agreement without a waiver of conflict, that the lawyer would not have had a backup system for his computer, and that there are no contemporaneous documents tending to authenticate the Agreement.

In addition to raising questions regarding evidence that does not exists, USI has presented evidence that the contemporaneous documents that do exist tend to undermine the existence of a management agreement. Upon examination of USI's financial books and records from January 2005 on, USI's CFO found no reference or entry of any sort

11

documenting any contract for any services with NVI. (Dkt. No. 268, Ex. 6, Khan Decl. ¶ 5.) Rather, USI's bookkeeping entries for the June 16, 2005, and December 13, 2005, wire transfers, are "Memo: Partners Portfolio" and "policy purchase." (Dkt. No. 268, Exs. 8, 9; Khan Decl. ¶ 7.) The November 2006 audit of USI's financial statements for the year ended April 30, 2006, does not mention the USI/NVI Agreement because Duscio did not reveal the existence of an agreement with NVI to USI's accountant, Joseph Pillo. (Dkt. No. 268, Ex. 7, Pillo Decl. ¶ 8.)

USI also contends that Defendants' asserted chronology of events is contradicted by other evidence. First, and foremost, the June 13, 2005, transfer of $4.5 million to NVI was made before the Court approved the sale of the TPI portfolio contract, and before the USI/NVI Agreement was entered into. There is also evidence that contradicts Duscio's declaration that he began discussions with NVI about managing the portfolio when he learned that Haynes & Moore LLC ("H&M") was not going to be able to handle management of the portfolio. James A. Threlkeld, a member of H&M, states in his declaration that prior to his August 24, 2005, letter to USI, H&M "had not told USI or Duscio that it was considering or intended to withdraw as Trustee and resign as Escrow Agent for USI." (Dkt. No. 268, Ex. 4, Threlkeld Decl. ¶ 10.)

USI contends that Defendants' representations regarding the funding of the management fee are nonsensical. According to USI, if the transfers were for a management contract to be paid in advance, there was no reason to make payment through Celello. There

was also no reason to make the transfer in two payments, or to combine the transfer of money for the management contract together with the transfer of $1.5 million that was eventually transferred from Celello's '9588 IOLTA Account to the '7064 escrow account to be used to pay policy premiums and to pay other fees related to the purchase of the TPI portfolio. (*See* Dkt. No. 322, Ex. 3, Celello Decl. ¶ 7.)

USI contends that the fee arrangement in the USI/NVI Agreement was disproportionate to the services to be rendered. NVI had been managing the TPI portfolio at $25 per policy per month. Even if $50 per policy was NVI's going rate, payment in advance for 850 policies for ten years does not take into consideration the likelihood that fewer than 850 policies would be transferred, that few of them would last ten years, and the interest alone on the $5 million fee was twice the fee NVI had been paid by the Receiver.

USI has also presented evidence that it contends contradicts Defendants' assertion that NVI managed the TPI portfolio pursuant to the July 2005 USI/NVI Agreement. In an October 2005, email, Torchia, on behalf of NVI, rejected USI's request that NVI obtain medical records and life expectancies on the TPI policies. (Dkt. No. 318, Ex. 31.) Torchia stated that the task of obtaining this information should be done by USI, not by NVI, and that NVI was already busy chasing down changes for USI and the Receiver, "which by the way was not our job to do but we are doing it as a courtesy to you." (*Id.*) He suggested that USI get the medical records itself, or "get the guys who are going to service this to do it." (*Id.*)

13

In November 2005, USI was billed by Centurion Policy Services LLC for policy-tracking services. (Dkt. No. 318, Ex. 27.)

In response to Defendant Celello's contention that the Receiver's investigation establishes that Celello did not divert any USI funds to NVI, USI points out that the Receiver did not investigate the basis for USI's $5 million payment to NVI, nor did he investigate whether NVI was in fact managing the TPI portfolio for USI. (Kramer Dep. 202.) The Receiver merely concluded that the $5 million payment had no effect on the Receivership estate. (Kramer Dep. 203-04.) Although Quilling accepted Torchia's explanation for the $5 million payment to NVI (02/28/2008 Prelim. Inj. Hr'g Tr. 82-84), it is evident that Quilling did not undertake a thorough investigation into the validity of the USI/NVI Agreement, as his primary concern was whether $5 million had been taken from the escrow account. (*Id.* at 86, 88, 89.)

Finally, USI notes that at the time it responded to Defendants' summary judgment motions, discovery was not yet complete. According to the Rule 56(f) declaration of USI's attorney, Robert Franzinger, depositions of virtually all of the key witnesses are yet to be completed, including depositions of NVI's former vice president, Michael Sullivan, who had made statements that the $5 million payment from USI to NVI constituted a kickback or broker's commission, depositions of NVI employees who would be knowledgeable about the claimed destruction of the hard drive of Celello's laptop computer, depositions of individuals who would likely refute Defendants' claim that NVI was primarily responsible for

14

management of the TPI portfolio, and depositions of the individuals who have given declarations. (Dkt. No. 318, Ex. 32, Franzinger Decl.)

Defendants have offered very little by way of explanation in response to Plaintiff's evidence regarding the discrepancies surrounding the purported USI/NVI management agreement. Upon consideration of all of the evidence and arguments, the Court is satisfied that USI has presented sufficient evidence to raise material issues of fact as to the legitimacy of the USI/NVI Agreement. Accordingly, Defendants' motion for summary judgment, which rests on the legitimacy of the USI/NVI Agreement, will be denied.

## IV.

Defendant Celello seeks summary judgment on the claims against him because he contends that there is no dispute that he properly disbursed all of the funds from the '7064 escrow account in accordance with the requirements of the Escrow Agreement entered into pursuant to the Purchase and Sale Agreement between USI and the Receiver, and that he properly disbursed the funds from his '9588 IOLTA account pursuant to the USI/NVI Agreement.

USI is not challenging Celello's distribution of funds from the '7064 escrow account. The issue in this case concerns the deposit of $5 million into Celello's '9588 IOLTA account and the disbursement of those funds. Accordingly, Defendant Celello's contention that he properly disbursed money from his '9588 IOLTA account rests on the validity of the USI/NVI Agreement. Because, as identified in Part III above, there are issues of fact as to

15

the validity of the USI/NVI Agreement, Celello's motion for summary judgment must similarly be denied.

An order consistent with this opinion will be entered.


Dated: June 4, 2010                              /s/ Robert Holmes Bell
                                                          ROBERT HOLMES BELL
                                                          UNITED STATES DISTRICT JUDGE